**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| VALUE RECAPTURE PARTNERS LLC, | ) | |
| | ) | |
| *Plaintiff*, | ) | No. 23 C 16550 |
| v. | ) | |
| | ) | Chief Judge Virginia M. Kendall |
| THE BOEING COMPANY and DENNIS A. MUILENBURG, | ) | |
| | ) | |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff Value Recapture Partners LLC ("Value Recapture Partners") brings this action against Defendant The Boeing Company ("Boeing") and its former CEO Dennis A. Muilenburg for violations of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j, and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. Plaintiffs allege that Boeing and Muilenburg made false and misleading statements about the October 2018 and March 2019 crashes of two 737 MAX airplanes, the subsequent Federal Aviation Administration grounding, and the recertification and return to service of the 737 MAX fleet.

Boeing moved to dismiss the complaint, arguing that Plaintiff lacks standing to assert securities-fraud claims as an alleged assignee, that Plaintiff's claims are time-barred, and that were the Court to reach the merits, that Plaintiff failed to state a claim for securities fraud. For the reasons below, Boeing's Motion to Dismiss [46] is granted on standing grounds.

## BACKGROUND

Value Recapture Partners filed the present action on December 6, 2023. (Dkt. 1). The allegations largely mirror those in a putative federal securities class action, *In re the Boeing Company Aircraft Securities Litigation*, 1:19-cv-02394, filed April 19, 2019, and pending in this

District before the Honorable Franklin U. Valderrama, U.S.D.J. (the "Class Action"). Indeed, the Parties stipulated to the stay of this matter while early merits determinations in the Class Action unfolded. (Dkt. 15).

Because Value Recapture Partners' claims resolve themselves on procedural grounds, this Court need not review the full scope of the merits of the Amended Complaint (Dkt. 28) in this Opinion. As a general matter, though, the claim focuses on Boeing and Muilenburg's allegedly false and misleading statements about the October 2018 and March 2019 crashes of two 737 MAX airplanes, which are designed and manufactured by Boeing. (*See generally id.*). Where this case diverges from the Class Action and related litigation is the entity's ability to bring suit under the Securities Exchange Act. As such, this Section focuses on the information key to this specific resolution. The following facts are set forth in the Amended Complaint, except where noted, which the Court accepts as true for purposes of a motion to dismiss. *See Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013).

On July 21, 2020, investment funds Valinor Capital Partners, L.P. and Valinor Capital Partners Offshore Master Fund, L.P. (collectively, "Assignors" or "Valinor") purportedly assigned their federal securities fraud claims deriving from the purchase of Boeing common stock to Value Recapture Partners. (Dkt. 28 ¶¶ 33–34, 37, 38). Value Recapture Partners is a Delaware limited liability company with its principal place of business in Massachusetts. (*Id*. ¶ 33). The Assignors purchased Boeing common stock on and/or after June 28, 2019, and held Boeing common stock through and after July 24, 2019. (*Id.* ¶ 40). The Assignors were managed by Valinor, a New York based investment advisor, during the relevant period. (*Id.* ¶ 360). Value Recapture Partners alleges that had Valinor known the truth about the 737 MAX—including its original certification, safety and reliability, flight systems, safety investigation, re-certification and return-to-service timeline—

it would not have caused the Assignors to purchase Boeing common stock or, if it had done so, would not have caused the Assignors to purchase at the prices they did. (*Id.* ¶¶ 365–69).

The Notice of Assignment provided that the Assignors "[a]bsolutely, unconditionally and irrevocably transferred and assigned to Value Recapture Partners LLC . . . all of [the Assignors'] rights, title and interest in, to, associated with, or connected in any manner to, any and all recovery rights and amounts payable in connection with any claims related to or arising out of the [Assignors'] ownership of, or any transaction in, [Boeing common stock] . . . ." (*Id.* ¶ 35). Thus, Value Recapture Partners alleges that it—by virtue of the Assignors' purchases of Boeing common stock, and the subsequent assignment—was damaged by Defendants' materially false and misleading statements and omissions of material fact. (*Id.* ¶ 40). Plaintiff seeks a jury trial for Boeing's alleged violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, with claims against Muilenburg pursuant to Section 20(a) based on his control of Boeing. (*Id.* at 145).

## **LEGAL STANDARD**

Section 10(b) of the Securities and Exchange Act of 1934 proscribes (1) the use or employment of any deceptive device or contrivance; (2) in connection with the purchase or sale of any security; and (3) in contravention of Securities and Exchange Commission rules and regulations. 15 U.S.C. § 78j(b). SEC Rule 10b-5 implements this statute and forbids the making of any "untrue statement of material fact" or the omission of any material fact "necessary in order to make the statements made . . . not misleading" in connection with sales of securities. 17 C.F.R. § 240.10b-5. To state a claim under Section 10(b), a plaintiff must allege that the defendant made a statement that was (1) false or misleading; (2) material; (3) made with scienter (knowledge of the statement's falsity); (4) connected to the purchase or sale of a security, on which investors

relied; (5) and which caused economic loss. *Matrix Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37–38 (2011). Investors' reliance on an allegedly false statement is presumed in an "impersonal, well-developed market for securities." *Basic Inc. v. Levinson*, 485 U.S. 224, 247 (1988).

In ruling on a motion to dismiss, the Court accepts all non-conclusory facts alleged in the complaint as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, the moving party bears the burden of establishing the insufficiency of the plaintiff's allegations. Securities fraud claims, like other species of fraud claims, are governed by the heightened pleading standard of Rule 9(b), which requires that a party alleging fraud "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. Proc. 9(b).

Private actions under Rule 10b-5 are subject to the further heightened pleading standards of the Private Securities Litigation Reform Act (PSLRA), which requires that "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). In 10(b)-5 actions, "mere silence about even material information is not fraudulent absent a duty to speak," but, "if one speaks, he must speak the whole truth." *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1331 (7th Cir. 1995). Moreover, an omission is material when there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having altered the 'total mix' of information made available." *Basic*, 485 U.S. at 231-32.

## DISCUSSION

Boeing moves for summary judgment on three general grounds: 1) that Value Recapture Partners, as an assignee, lacks standing to assert securities-fraud claims; 2) that Value Recapture Partners' claims are time-barred by the two-year statute of limitations and the five-year statute of

repose; and 3) that Value Recapture Partners failed to state a claim for securities fraud on the merits. (Dkt. 47 at 8, 10, 14). Because the Court disposes of this action on the first argument, the other two contentions are not addressed in this Opinion.

I.    **Standing**

A.  **Defendant's Motion Properly Brought**

Standing is a threshold requirement because it derives from the Constitution's limit on federal courts' authority to resolve "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1; *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020).

Generally, Fed.R.Civ.P. 12(b)(1) motions to dismiss for lack of standing or other subject matter jurisdiction considerations fall into two categories: facial attacks and factual attacks. Fed.R.Civ.P. 12(b)(1). A facial attack challenges the sufficiency of the pleading itself and thus does not look beyond allegations in the complaint; in contrast, a factual attack challenges the factual existence of subject matter jurisdiction. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). Seventh Circuit "law is clear that when considering a motion that launches a factual attack against jurisdiction, the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* at 444 (citation modified) (collecting cases).

While at the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice," but "[o]nce the allegations supporting standing are questioned as a factual matter—either by a party or by the court—the plaintiff must support each controverted element of standing with "competent proof." *Bazile*, 983 F.3d at 278. "[I]f the facts place the

district court on notice that the jurisdictional allegation probably is false, the court is duty-bound to demand proof of its truth." *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 777 (7th Cir.1986).

Plaintiff suggests that Defendant's standing motion is improperly brought under Rule 12(b)(1) and not 12(b)(6) because the arguments are broadly statutory and prudential, not constitutional. (Dkt. 48 at 36). But this argument parallels one the Supreme Court rejected in *Lexmark International v. Static Control Components, Inc.*, when the petitioner asked the Court to decline to adjudicate the claim on grounds that were "prudential," rather than constitutional. 572 U.S. 118, 125–27 (2014). The Supreme Court identified "tension" between that request and its "recent reaffirmation of the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging." *Id.* The *Lexmark* Court likewise took issue with the "statutory standing" term, noting that it is "misleading" to treat it as "effectively jurisdictional" when "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the court's statutory or constitutional power to adjudicate the case." *Id.* at n.4 (citation modified) (collecting cases).

Here, Boeing contends that Plaintiffs have no "arguable" cause of action, which would in turn implicate subject matter of jurisdiction. *Id.*; *see also CP Stone Fort Holdings, LLC v. John*, 2016 WL 5934096, at *3 (N.D. Ill. Oct. 11, 2016). In sum, the Court must determine whether or not the statute arguably protects the sort of interest a would-be plaintiff seeks to advance—first by determining the purpose of a particular statutory provision, then by assessing whether the interests claimed by the plaintiff are among those statutory interests. *See T.S. by & through T.M.S. v. Heart of CarDon, LLC*, 43 F.4th 737, 740–41 (7th Cir. 2022).

**B. Application to Section 10(b) of the Securities and Exchange Act of 1934**

Boeing contends that Value Recapture Partners lacks standing because it has never purchased or sold any Boeing stock; thus, its attempt to sue as the purported assignee of unrelated parties' securities-fraud claims is invalid. (Dkt. 47 at 8).

The seminal decision in *Blue Chip Stamps v. Manor Drug Stores* proscribed the standing rules for 10(b)5 actions, adopting the so-called *Birnbaum* Rule and restricting 10b-5 actions to persons who are either purchasers or sellers of securities. 421 U.S. 723 (1975) (citing *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461 (2d Cir.), *cert. denied,* 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952)). The *Blue Chip* Court highlighted Congress' concern with blackmail, nuisance, and strike suits and the resulting decision to circumscribe the possible plaintiff class, as well as the evidentiary problems inherent in allowing a non-purchaser or non-seller to bring a Rule 10b–5 action. *Smith v. Ayres*, 977 F.2d 946, 949–51 (5th Cir. 1992).

Boeing argues that *Blue Chip*'s explicit embrace of the *Birnbaum* Rule bars Value Recapture Partners' claim, reasoning that securities fraud claims are not freely assignable. (Dkt. 47 at 8). Plaintiff, meanwhile, suggests that because *Blue Chip* rejected the claims of the offerees of a stock offering, the holding is limited to those facts where no purchase or sale ever occurs. (Dkt. 48 at 38). That's not accurate. *Blue Chip* clearly reviewed who may maintain a private cause of action for money damages for violation of Rule 10b-5 more generally. *Blue Chip*, 421 U.S. at 727. The Court noted two scenarios where certain plaintiffs could access a pseudo-exception to the *Birnbaum* Rule: 1) actual shareholders who allege they decided not to sell their shares because of securities violations; and 2) "shareholders, creditors, and perhaps others related to an issuer who suffered loss in the value of their investment due to corporate or insider activities in connection with the purchase or sale of securities," that could potentially bring a derivative action on behalf

7

of the corporate issuer if the latter is itself a purchaser or seller of securities. *Id.* at 737–38. Others, like the offerees of a stock offering at issue in *Blue Chip*, would not be so lucky.

While the Supreme Court in *Blue Chip* did not directly address the potential claims of purported assignees, the Fifth Circuit in *Smith* found these plaintiffs to be squarely foreclosed by the policy considerations laid out in *Blue Chip*. 977 F.2d at 946. Still, it reserved the question of whether some Rule 10b–5 claims may be expressly assigned in other circumstances—specifically, where the assignment "did not appear to have been made for the purpose of creating standing and pursuing a vexatious lawsuit." *Id.* at 950–51. At least one court in this District has made the same determination, asserting alignment with the majority view. *See Soderberg v. Gens*, 652 F. Supp. 560, 563–64 (N.D. Ill. 1987) ("Recent case law interpreting § 10(b) is virtually unanimous in concluding that the federal cause of action does not attach automatically to the security itself and pass to the next purchaser.") (collecting cases); *see Goldberg v. Touche Ross & Co.*, 531 F.Supp. 86, 88 (S.D.N.Y.1982) (assignment of 10b–5 action could not be used to defeat federal law prohibiting joint tortfeasor indemnity actions under Rule 10b–5).

Value Recapture Partners, for its part, notes that another court in the Northern District has rejected the argument that 10b-5 claims cannot be assigned. *CP Stone Fort Holdings, LLC*, 2016 WL 5934096, at *3 (granting a motion to dismiss on other grounds). The case did not address the *Soderberg* decision. Instead, Judge Gettleman noted a general Article III tradition of permitting claim assignments for litigation purposes and highlighted that the defendant "has raised nothing to suggest that the assignment is a sham designed . . . to avoid [] litigation obligations." *Id.*; *see also BG Litig. Recovery I, LLC v. Barrick Gold Corp.*, 180 F. Supp. 3d 316, 329 (S.D.N.Y. 2016) (emphasizing the historical tradition of suits by assignees); *Combs v. Case*, 2007 WL 9710799, at *9 (D. Haw. Sept. 20, 2007) (finding the *Blue Chip* policy motivations inapplicable).

All three of those decisions, though, dealt with factual circumstances distinct from the ones apparent here. In *CP Stone Holdings*, Judge Gettleman noted that the "purpose of the assignment was to allow the original members of [the purchasing entity], the persons who were actually damaged by the alleged manipulation, to bring suit"—not the outsourcing of the claims themselves to a third-party entity. *CP Stone Fort Holdings, LLC*, 2016 WL 5934096, at *3; *see also BG Litig. Recovery I, LLC*, 180 F. Supp. 3d at 319 (similar). In *Combs*, Judge Jones discussed the policy considerations in *Blue Chip* and determined that because the assignments at issue were "inter-family agreements based on death or infirmity, and claims based on beneficial ownership of shares held in trust," they sat outside those articulated concerns. *Combs*, 2007 WL 9710799, at *9.

Further, this Court does not find the general historical tradition persuasive in light of the specific holding outlined in *Blue Chip*. Instead, it embraces the reasoning of *Smith*. The critical inquiry, then, becomes whether this case sits squarely within that logic, or whether it is more reflective of *Smith*'s reserved possibility of a viable express assignment for 10b-5 purposes. Upon review, this Court finds that if that reserved possibility exists, it is not present in these facts.

Value Recapture Partners states that Valinor assigned the claims to avoid delaying the administrative wind down of Valinor, which allowed for the prompt return of investment capital to Valinor's stakeholders. (Dkt. 48 at 42). In other words, it contends its express purpose is "to return investment capital to stakeholders" and not a "sham" purpose, as in *Smith*. (*Id.*) But Value Recapture Partners' explicit business is "purchasing recovery rights from pooled investment vehicles." (Defendant's Exhibit 31: December 16, 2022, Value Recapture Partners Letter to SEC). Value Recapture Partners argues that there is "nothing problematic about this," (Dkt. 48 at 40), which is completely correct as a general matter. The issue is specific to 10b-5 standing because "litigation under Rule 10b-5 presents a danger of vexatiousness different in degree and in kind

from that which accompanies litigation in general," thus requiring a limited private remedy even if it potentially "prevents some deserving plaintiffs from recovering damages." *Merrill Lynch, Pierce, Fenner & Smith, Inc., v. Dabit*, 547 U.S. 71, 80 (2006).

The story of how Value Recapture Partners came to its assignment stands apart from the facts of *Smith*. There, a settlement agreement expressly assigned any and all claims against the defendant to the plaintiff and granted the plaintiff the right to sue as assignee of such claims. *Smith*, 977 F.2d at 948. "Under the settlement agreement, [the plaintiff] was to have no other benefits of ownership; [he] could not participate in management, could not vote his share, could not bring other derivative suits, and was obliged to reconvey the single share to [the other party to the settlement] if the share became unnecessary to maintain the derivative action against [the defendant]." *Id.* "In sum, [the plaintiff's] single share of stock was granted to him for the sole purpose of generating federal standing." *Id.*

While the assignment from Valinor to Value Recapture Partners comes across as less obviously tactical than the *Smith* assignment, it nonetheless compels a similar result. Valinor, now defunct, expressly purported to assign its claims to Value Recapture Partners to "generat[e] federal standing" in this action. *See id.* The *Blue Chip* Court repeatedly emphasized the tight cohort of "plaintiffs who actually purchased or actually sold" even if that emphasis " undoubtedly excludes plaintiffs who have in fact been damaged by violations of Rule 10b-5." *Blue Chip*, 421 U.S. at 742–43 (noting that [t]he fact of purchase of stock and the fact of sale of stock are generally matters which are verifiable by documentation, and do not depend upon oral recollection, so that failure to qualify under the *Birnbaum* rule is a matter that can normally be established by the defendant . . . on a motion to dismiss.") (citation modified).

10

The *Blue Chip* Court also noted concern with the evidentiary problems inherent in allowing a non-purchaser or non-seller to bring a Rule 10b–5 action. *Id.* at 741–43. Value Recapture Partners contends that Valinor is contractually obligated to provide the requisite discovery to satisfy its obligations, and that Value Recapture Partners will provide such discovery (including witness testimony, documents, and trading records) to Defendants "[a]s appropriate." (Dkt. 48 at 39). And that third-party discovery is of the type that would, "in the absence of the *Birnbaum* [R]ule," otherwise "be sufficient for a plaintiff to prove . . . defendant's violation of Rule 10b-5." *Blue Chip*, 421 U.S. at 745–46 (citation modified). The problem is that the Supreme Court explicitly considered and rejected that type of discovery process. *Id.* Instead, it noted that the "virtue of the *Birnbaum* [R]ule, simply stated, in this situation, is that it limits the class of plaintiffs to those who have at least dealt in the security to which the prospectus, representation, or omission relates. And their dealing in the security, whether by way of purchase or sale, will generally be an objectively demonstrable fact in an area of the law otherwise very much dependent upon oral testimony." *Id.* at 747 (citation modified).

Neither party raised, by analogy, the availability (or lack thereof) of 10b-5 actions for options traders; this Court does so of its own accord because it is one of the only available Seventh Circuit precedents interpreting this aspect of *Blue Chip*. In *Fry v. UAL Corp.*, Judge Posner held that option traders have standing to sue under Rule 10b-5, rejecting contrary views out of the Eighth Circuit on the grounds that "misrepresentations do[] not depend on the existence of a fiduciary relationship." 84 F.3d 936, 938–39 (7th Cir. 1996); *cf. Laventhall v. General Dynamics Corp.*, 704 F.2d 407 (8th Cir.), *cert. denied*, 464 U.S. 846, 104 S.Ct. 150 (1983) (holding that buyers and sellers on the options market cannot avail themselves of 10b-5 because they are not in privity to the corporation and thus it owes no duty to them).

11

The *Fry* decision broadly rested on the significant exposure to loss that short sellers possess. *Fry*, 84 F.3d at 938–39 ("The potential liability to short sellers is thus greater than that to either the buyers of puts, who can lose only the price they have paid for the put, or the sellers of puts, who can lose only the difference between the strike price and a lower market price (but not lower than zero of course), minus the price of the put."). But that reasoning does not govern a scenario like the present one, where relative risks and roles in the market sit outside the parameters of the express assignment. If anything, Value Recapture Partners' business model allows it to "await developments on the sidelines without risk," the deterrence of which was a motivator in the *Blue Chip* Court's reasoning. *Blue Chip*, 421 U.S. at 747.

Ultimately, this Court finds that the guiding principles laid out in *Blue Chip*, the Fifth Circuit's reasoning in *Smith* and adopted by another judge in this district in *Soderberg*, as well as the cabined exceptions to that rule expressed by district courts in *CP Stone Fort Holdings, LLC*, *BG Litig. Recovery I, LLC*, and *Combs*, govern the result in this case. Consequently, Boeing's Motion to Dismiss is granted. (Dkt. 46). The Court need not reach any further issue related to the statute of limitations or the merits of Value Recapture Partners' claim, which are mooted by the analysis laid out in this Opinion.

## CONCLUSION

For the aforementioned reasons, the Court grants Defendant's Motion to Dismiss. [46] The First Amended Complaint [28] is dismissed with leave to refile on or before 3/6/26 if Value Recapture Partners is able to do so in accordance with this Order. If Plaintiff does not refile by that date, the Court will dismiss the Complaint with prejudice.

Date: 2/17/2026

Virginia M. Kendall
United States District Judge