**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| VALUE RECAPTURE PARTNERS LLC, | ) | |
| *Plaintiff*, | ) | No. 23 C 16550 |
| v. | ) | |
| | ) | Chief Judge Virginia M. Kendall |
| THE BOEING COMPANY and DENNIS A. MUILENBURG, | ) | |
| *Defendants*. | ) | |

**OPINION & ORDER**

Plaintiff Value Recapture Partners LLC ("Value Recapture") brings this action against Defendant, The Boeing Company, and its former CEO Dennis A. Muilenburg ("Boeing") for violations of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j, and Rule 10b-5 of 17 C.F.R. § 240.10b-5. Value Recapture alleges that Boeing and Muilenburg made false and misleading statements about the October 2018 and March 2019 crashes of two 737 MAX airplanes, the subsequent Federal Aviation Administration grounding, and the recertification and return to service of the 737 MAX fleet.

Following the Court's dismissal of Plaintiff's First Amended Complaint ("FAC") (Dkt. 57), Boeing now moves to dismiss Value Recapture's Second Amended Complaint ("SAC"). It offers the same three arguments from the first Motion to Dismiss: (1) that Value Recapture lacks standing to assert securities-fraud claims as an assignee, (2) that Plaintiff's claims are time-barred, and that (3) if the Court were to reach the merits, Plaintiff failed to state a claim for securities fraud. (Dkt. 47). For the reasons below, the Court GRANTS Boeing's second Motion to Dismiss [64] on standing grounds.

## BACKGROUND

Value Recapture initially filed this case on December 6, 2023. (Dkt. 1). The Court dismissed the First Amended Complaint on February 17, 2026, because of lack of standing. (Dkt. 57). Value Recapture subsequently filed the Second Amended Complaint on March 6, 2026. (Dkt. 58). The claims in the SAC largely mirror Value Recapture's claims from its FAC (Dkt. 28) and those in a putative federal securities class action, *In re the Boeing Company Aircraft Securities Litigation*, 1:19-cv-02394, filed April 19, 2019, and pending in this District before the Honorable Franklin U. Valderrama (the "Class Action"). The SAC supplements the FAC with information about how Value Recapture received its claims from Assignors, details about Assignors' business practices, and information about the "Litigation Cooperation Agreement" that Value Recapture entered into with Assignors that requires Assignors' cooperation with discovery in this litigation. (Dkt. 58 ¶¶ 317-18).

Because Value Recapture's claims resolve themselves largely on procedural grounds, the Court declines to review the full scope of the merits of the SAC. As a general matter, though, the claims focus on Boeing and Muilenburg's allegedly false and misleading statements surrounding the October 2018 and March 2019 crashes of two 737 MAX airplanes designed and manufactured by Boeing. (*See generally id.*). Where this case diverges from the Class Action and related litigation is Value Recapture's ability to bring suit under the Securities Exchange Act. As such, this Section focuses on the information key to this specific resolution. The following facts are set forth in the SAC, which the Court accepts as true for purposes of a motion to dismiss. *See Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013).

Value Recapture is a Delaware limited liability company with its principal place of business in Massachusetts. (Dkt. 58 ¶ 36). Value Recapture received the fraud claims that it now

brings, which derive from the purchase of Boeing common stock, from Valinor Capital Partners, L.P. and Valinor Capital Partners Offshore Master Fund, L.P. ("Assignors" and "Valinor") on July 21, 2020. (*Id.* ¶ 313). Value Recapture asserts that, at the time that it received Assignors' fraud claims, Assignors sought to wind down (*Id.* ¶ 304).[1] When investment advisors (like Assignors) seek to wind down operations, it is within their ordinary course of business to assign their investment funds' securities claims "in order to effectuate the liquidation process and return capital to investors." (*Id.* ¶ 309). Through this process, Value Recapture received Assignors' claims. (*Id.* ¶¶ 310-313). The Notice of Assignment provided that the Assignors "[a]bsolutely, unconditionally and irrevocably transferred and assigned to Value Recapture Partners LLC . . . all of [the Assignors'] rights, title and interest in, to, associated with, or connected in any manner to, any and all recovery rights and amounts payable in connection with any claims related to or arising out of [Assignors'] ownership of, or any transaction in [Boeing common stock] . . ." (*Id.* ¶ 314) (alterations in original).

Value Recapture alleges that had Valinor known the truth about the 737 MAX—including its original certification, safety and reliability, safety investigation, re-certification and return-to-service timeline—it would not have caused the Assignors to purchase Boeing common stock, or if they had done so, would not have caused the Assignors to purchase at the prices they did. (*Id.* ¶ 412). Thus, Value Recapture alleges that it—through the Assignors' purchases of Boeing common stock and the subsequent assignment—was damaged by Defendant's materially false and misleading statements and omissions of material fact. (*Id.* ¶ 414). Value Recapture seeks a jury

[1] Defendant's motion to dismiss [65] and Plaintiff's opposition [68] both state that Assignors are not, in fact, defunct. Value Recapture does, however, explain that the Assignors only continue to exist because, "at the time of the wind down, Assignors held several highly illiquid private investments that could not be liquidated on a quicker timeline." (Dkt. 68 at 23 n.11; *see also* Dkt. 65 at 12; Dkt. 70 at 3).

trial for Boeing's alleged violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, with claims against Muilenburg pursuant to Section 20(a) based on his control of Boeing. (*Id*. at 143).

## LEGAL STANDARD

Section 10(b) of the Securities and Exchange Act of 1934 proscribes (1) the use or employment of any deceptive device or contrivance; (2) in connection with the purchase or sale of any security; and (3) in contravention of Securities and Exchange Commission ("SEC") rules and regulations. 15 U.S.C. § 78j(b). SEC Rule 10b-5 implements this statute and forbids the making of any "untrue statement of material fact" or the omission of any material fact "necessary in order to make the statements made . . . not misleading" in connection with sales of securities. 17 C.F.R. § 240.10b-5. To state a claim under Section 10(b), a plaintiff must allege that the defendant made a statement that was (1) false or misleading; (2) material; (3) made with scienter (knowledge of the statement's falsity); (4) connected to the purchase or sale of a security, on which investors relied; (5) and that caused economic loss. *Matrix Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011). Investors' reliance on an allegedly false statement is presumed in an "impersonal, well-developed market for securities." *Basic Inc. v. Levinson*, 485 U.S. 224, 247 (1988).

In ruling on a motion to dismiss, the Court accepts all non-conclusory facts alleged in the complaint as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, the moving party bears the burden of establishing the insufficiency of the plaintiff's allegations. *Marcure v. Lynn*, 922 F.3d 625, 631 (7th Cir. 2021). Securities fraud claims, like other species of fraud claims, are governed

by the heightened pleading standard of Rule 9(b), which requires that a party alleging fraud "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b).

Private actions under Rule 10b-5 are subject to the further heightened pleading standards of the Private Securities Litigation Reform Act (PSLRA), which requires that "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). In 10(b)-5 actions, "mere silence about even material information is not fraudulent absent a duty to speak," but, "if one speaks, he must speak the whole truth." *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1331 (7th Cir. 1995). Moreover, an omission is material when there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having altered the 'total mix' of information made available." *Basic*, 485 U.S. at 231-32.

**DISCUSSION**

Boeing moves to dismiss Value Recapture's SAC for the same three reasons that it asserted in its first motion to dismiss: (1) that Value Recapture, as an assignee, lacks standing to assert securities-fraud claims, (2) that Value Recapture's claims are time-barred, and (3) that Value Recapture failed to state a claim for securities fraud on the merits. Boeing's first argument is correct, so this Order does not address its second and third contentions.

Standing, which is derived from the Constitution's limit on federal courts' authority to resolve "cases" and "controversies," is a threshold requirement. U.S. Const. art. III, § 2, cl. 1; *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020). *Blue Chip v. Manor Drug Stores* guides the Court's standing analysis with respect to Rule 10b-5. 421 U.S. 723 (1975). Adopting the so-called *Birnbaum* Rule, *Blue Chip* restricted 10b-5 actions to purchasers or sellers

of securities. *Id*. (citing *Birnbaum v. Newport Steel Corp*., 193 F.2d 461 (2d Cir. 1952), *cert denied*, 343 U.S. 956 (1952)). The Court highlighted Congress' concerns with blackmail, nuisance, and strike suits and the resulting decision to circumscribe the possible plaintiff class, as well as the evidentiary problems inherent in allowing a non-purchaser or non-seller to bring a 10b-5 action. *Smith v. Ayres*, 977 F.2d 946, 949-51 (5th Cir. 1992). *Blue Chip*, however, noted two exceptions where certain plaintiffs could benefit from pseudo-exceptions to the *Birnbaum* Rule: (1) actual shareholders who allege they decided not to sell their shares because of securities violations, and (2) "shareholders, creditors, and perhaps others related to an issuer who suffered loss in the value of their investment due to corporate or insider activities in connection with the purchase or sale of securities" that could potentially bring a derivative action on behalf of the corporate issuer if the latter itself is a purchaser or seller of securities. *Blue Chip*, 421 U.S. at 737-38.

Like in its first motion to dismiss, Boeing contends that Value Recapture lacks standing under *Blue Chip* because Value Recapture—an assignee of Valinor's fraud claims—never purchased or sold any share of Boeing stock. (Dkt. 65 at 10-11). Value Recapture, for its part, argues that it has standing because: (1) its assignment, which was made through the ordinary course of business, was not made in order to create standing, and because; (2) this lawsuit is not vexatious, nor does it implicate the policy concerns articulated in *Blue Chip* and its progeny. (Dkt. 68 at 18-23). While the SAC provides more detail about the process of the assignment than the Court reviewed at the first motion to dismiss, the determinative facts remain the same. Value Recapture still lacks 10b-5 standing to bring this lawsuit.

Like the Court explained in its previous dismissal Order, *Blue Chip* did not directly address potential claims of purported assignees like Value Recapture. (Dkt. 57 at 8). Yet, other courts, including the Fifth Circuit and some within this District, have found that the policy considerations

discussed in *Blue Chip* foreclose claims by assignees. *See e.g. Smith* 977 F.2d 946 (holding that assignee did not have standing because although *Blue Chip* did not discuss standing of assignees, it discourages actions by remote purchasers); *Soderberg v. Gens*, 652, F. Supp. 560, 563-64 (N.D. Ill. 1987) (explaining that "the federal cause of action does not attach automatically to the security itself and pass to the next purchaser.") (collecting cases); *Goldberg v. Touche Ross & Co.*, 531 F. Supp. 86, 88 (S.D.N.Y. 1982) (assignment of 10b-5 action could not be used to defeat federal law prohibiting joint tortfeasor indemnity actions under Rule 10b-5). This was true when the Court dismissed the FAC and is still true now.

Still, Value Recapture maintains that its facts should guide the Court to the conclusion that it has 10b-5 standing. Value Recapture's SAC details how the Assignors made investments, (Dkt. 58 ¶ 44), the process by which the Assignors acquired the claims, (*id*. ¶¶ 41-48), and the process by which Value Recapture purchased the Assignors' claims. (*Id*. ¶ 37). In particular, Value Recapture stresses that it is within the "ordinary course of business" for advisors (like Assignors) to "assign their investment funds' securities claims in order to effectuate the [wind down] and liquidation process and return capital to investors." (*Id*. ¶ 309). Value Recapture therefore insists that the facts of this assignment are sufficiently different from those in *Smith*[2] for this Court to rule that it has standing.

While it is true that the assignment here indeed appears less obviously tactical than the one in *Smith* and is not a problem in principle, it compels a similar result. Most importantly, *Blue Chip* specified a set of plaintiffs (buyers and sellers of securities) — which Value Recapture does not

[2] As the Court explained in its previous order, in *Smith*, a settlement agreement expressly assigned any and all claims against the defendant to the plaintiff and granted the plaintiff the right to sue as assignee of such claims. Under this agreement, the plaintiff "was to have no other benefits of ownership; [he] could not participate in management, could not vote his share, could not bring other derivative suits, and was obliged to reconvey the single share to [the other party to the settlement] if the share became unnecessary to maintain the derivative action against [the defendant]." (Dkt. 57 at 10 (citing *Smith*, 977 F.2d at 948)).

fit into. In emphasizing the specifically defined group of plaintiffs who have standing under 10b-5 (those who "actually purchased or actually sold" securities, the *Blue Chip* Court recognized the less-than-ideal side effect that some "plaintiffs who have in fact been damaged by violations of Rule 10b-5" may be excluded. *Blue Chip*, 421 U.S. at 743. Nor does Value Recapture fit into one of the *Birnbaum* exceptions. *See Birnbaum*, 193 F.2d 461. Moreover, even though Value Recapture acquired these claims as part of regular business operations, this transaction occurred after the alleged fraud and over a year after the Class Action was filed.[3] Although this is not identical to the acquisition of claims in order to create standing, it raises similar red flags. The Court cannot ignore the potential that granting standing to Value Recapture would encourage a business model of entities waiting to see if there might be a securities claim and *then* acquiring claims. Finally, Value Recapture insists that the policy issues in *Blue Chip* do not apply because this is not a vexatious lawsuit. (Dkt. 68 at 18-23). This may be true, but it does not mean that the Court should carve out an exception to *Blue Chip's* established rule and the majority interpretation of that rule that assignees do not automatically benefit from 10b-5 standing.

The parties also disagree as to whether, if this litigation were to proceed, it would create the "third party discovery process" that the Supreme Court considered—and rejected—in *Blue Chip*. 421 U.S. at 745-46. Value Recapture has a Litigation Cooperation Agreement with Assignors that requires Assignors to provide all discovery necessary under the Federal Rules of Civil Procedure for this litigation. (Dkt. 58 ¶¶ 317-18). Boeing argues that this Agreement does not anticipatorily remedy the evidentiary problems that arise if a non-seller or non-buyer of securities brings a case. (Dkt. 65 at 14). Value Recapture argues that the Agreement cancels out discovery-related concerns. (Dkt. 68 at 2). Neither party offers any case in which a court

[3] The Class Action was filed on April 19, 2019. The Assignment occurred on July 21, 2020. (Dkt. 58 ¶ 313).

determined that a Litigation Cooperation Agreement moots any issues arising from third-party-discovery in similar situations. Because *Blue Chip* specifically expressed doubts about third-party discovery, the Court cannot find that this agreement sidesteps these concerns.

To hold that Value Recapture—who acquired these claims several years after the alleged fraud and never directly purchased or sold securities—has standing runs contrary to the Supreme Court's priorities articulated in *Blue Chip* and diverges from the majority view that the policy considerations from *Blue Chip* foreclose the claims of purported assignees. *See Soderberg*, 652 F. Supp. at 563-64 ("Recent case law interpreting § 10(b) is virtually unanimous in concluding that the federal cause of action does not attach automatically to the security itself and pass to the next purchaser.") (collecting cases). Accordingly, Boeing's motion to dismiss is GRANTED with prejudice on standing grounds.

**CONCLUSION**

The Court GRANTS defendant's motion to dismiss with prejudice [64].

Virginia M. Kendall
United States District Judge

Date: October 15, 2026